UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XIANGDI LIN (A-241-396-064), | No. 1:26-cv-0608 DC CSK |
| Petitioner, | FINDINGS AND RECOMMENDATIONS |
| v. | |
| Warden, Golden State Annex, | |
| Respondent. | |

Petitioner Xiangdi Lin, a native/citizen of China who is proceeding through counsel, entered the United States on or around June 2023, has filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Petitioner was initially detained inside the United States and released on July 7, 2023, on bond pursuant to standard removal proceedings.  After petitioner was arrested by local authorities, on March 19, 2025, petitioner was arrested and re-detained by U.S. Customs Enforcement ("ICE") and has been in continuous detention since this date.  This habeas action concerns petitioner's re-detention.  For the reasons that follow, the Court recommends that the petition for writ of habeas corpus be denied.

///

///

---

[1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

## I.     FACTUAL BACKGROUND[2]

Petitioner is a citizen and native of China.  (ECF No. 1 at ¶ 46.)  On or around June 18, 2023, petitioner entered the United States and was detained.  (Id. at ¶ 2; ECF No. 8 at 19 (Notice to Appear).)  On June 28, 2023, DHS issued a Notice to Appear, which placed petitioner in standard removal proceedings pursuant to Immigration and Nationality Act ("INA") § 240, codified at 8 U.S.C. § 1229a.[3]  (ECF No. 8 at 18.)  The Notice to Appear charged petitioner under 8 U.S.C. § 1182(a)(6)(A)(i)[4] as a noncitizen "present in the United States without being admitted or paroled"; it did not assert he was an "arriving alien."  (Id.)  On July 7, 2023, petitioner was released from INS custody on payment of bond.  (ECF No. 8 at 23.)

Thereafter, petitioner filed an application for asylum with the immigration court.  (ECF No. 1 at ¶ 53.)  Petitioner applied for temporary work authorization and his application was approved.  (Id. at 36.)

In March 2025, the Shasta County District Attorney's Office charged petitioner with allegedly working as a farmhand at a marijuana farm near Redding, California.  (ECF 1 at ¶ 3.)  On March 18, 2025, petitioner was arrested and booked into the Shasta County Jail on felony charges of cultivating marijuana plants and conspiracy.  (ECF No. 8 at 1.)  On March 19, 2025, petitioner was arrested and detained by ICE.  (ECF 1 at ¶ 23.)  On May 15, 2025, an immigration judge ("IJ") denied petitioner's request for custody redetermination pursuant to 8 C.F.R. § 1236 because petitioner "has not met his burden to show that he is not a danger and is not a flight risk."  (ECF No. 8 at 25 (IJ Order).)  On September 26, 2025, the BIA affirmed the IJ's decision.  (ECF No. 8 at 30 (BIA Order).)

---

[2]  Petitioner filed a verified habeas petition.  (ECF No. 1 at 19.)  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).

[3]  Removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240) are standard removal proceedings, which are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

[4]  The Notice to Appear identifies INA § 212(a)(6)(A)(i), which is codified at 8 U.S.C. § 1182(a)(6)(A)(i).

In December 2025, all criminal charges against petitioner were dismissed,[5] and petitioner sought release on bond from an IJ based on this change in circumstances. (ECF No. 1 at ¶ 5.) On January 14, 2026, the IJ denied petitioner's request for a custody redetermination based on lack of jurisdiction. (ECF No. 8 at 32-33 (IJ Order.) The IJ expressly stated:

> The Court need not and does not make a determination as to whether changed circumstances exist as to danger or flight, because the Court determines that, in light of Matter of YAJURE HURTADO, this Court lacks jurisdiction over Respondent's request for custody redetermination.

(Id. at 32.) On January 30, 2026, an IJ denied all applications for relief, including petitioner's request for asylum, and ordered petitioner removed to China. (ECF No. 8 at 32, 37.) On February 6, 2026, petitioner filed an appeal, which remains pending. (ECF No. 9 at 8.)

Petitioner has been in continuous detention since March 19, 2025. (Id. at 23.)

## II.     PROCEDURAL BACKGROUND

On January 23, 2026, petitioner filed his petition for writ of habeas corpus. (ECF No. 1.) On February 6, 2026, respondents timely filed a motion to dismiss the petition, and on February 15, 2026, petitioner timely filed an opposition to the motion to dismiss. (ECF Nos. 8, 9.) Respondents did not file a reply. Briefing is now complete.

## III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's

---

[5] Respondents do not dispute this fact.

habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV.   DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  Petitioner challenges his detention based on the violation of (1) the Immigration and Nationality Act; and (2) the Fifth Amendment due process clause.[6]  (ECF No. 1 at 16-17.)  Respondents do not argue that petitioner is a flight risk or a danger to the community and instead argue that as an "applicant for admission," petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2) and he is ineligible for a bond hearing.  (ECF No. 8 at 2.)  Respondents also argue that petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress.  (Id.)  Further, respondents contend petitioner received a bond hearing and failed to exhaust his administrative remedies.  (Id. at 3-5.)  Finally, respondents argue that the Maldonado Bautista class action has no bearing on the present case.[7]  (Id. at 5-11.)

### A.   Exhaustion

Respondents note that petitioner received a bond hearing and contend he is lawfully detained under § 1225(a)(1).  (ECF No. 8 at 3.)  But even under § 1226, respondents argue that

---

[6]  In the "Petition for Writ of Habeas Corpus," petitioner, who is represented by counsel, claims to submit his petition and a motion for temporary restraining order.  (ECF No. 1.)  However, petitioner does not address such a motion in the remainder of the petition, and does not address Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008), or any of the factors required to be addressed under Winter.  In addition, to the extent petitioner intended to seek a restraining order, the filing does not comply with Local Rule 231(c), which requires that petitioner file a motion for temporary restraining order in addition to the complaint (or petition).  L.R. 231(c); R. Governing § 2254 Cases R. 1(b).  The Court finds that petitioner's conclusory reference to a motion for temporary restraining order is insufficient to raise a motion for a temporary restraining order. Accordingly, the Court does not address respondents' arguments in opposition to the putative motion.  (See ECF No. 8 at 11.)  The Court further notes that petitioner has not brought a prolonged detention claim, and such a claim would likely need to be raised in a new habeas petition.

[7]  See Maldonado Bautista v. Santacruz, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), judgment entered sub nom. Maldonado Bautista v. Noem, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).

4

exhaustion should not be waived because petitioner did not appeal the decision of the BIA, and waiving exhaustion would allow petitioner to "bypass the administrative scheme because [petitioner] is currently in immigration proceedings." (Id. at 5.) Respondents further argue that "administrative review would be likely to allow the agency to correct any mistakes and preclude the need for judicial review." (Id.) Respondents also argue that petitioner has not established that this remedy would be futile or inadequate. (Id.)

28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004). However, "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). Because exhaustion is not required by statute, it is not jurisdictional. Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other grounds by Reno v. Koray, 515 U.S. 50, 54-55 (1995) (citing Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc., 811 F.2d 1209, 1223 (9th Cir. 1987)). If a petitioner has not properly exhausted his claims, the district court, in its discretion, may "determine whether to excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court." Id. "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (internal citation and quotation marks omitted). However, the court may waive the exhaustion requirement when administrative remedies are inadequate, irreparable injury may occur without immediate judicial relief, or exhaustion otherwise would be futile. Laing, 370 F.3d at 1000-01 ("[D]istrict court's habeas jurisdiction under 28 U.S.C. § 2241 is ordinarily reserved for instances in which no other judicial remedy is available.").

The Court concludes that the prudential exhaustion requirement should be waived. The Court joins the multitude of district courts to consider this issue recently in the context of habeas

petitions filed by immigrant detainees.  See Singh v. Andrews, 2025 WL 3523057, at *2 (E.D. Cal. Dec. 9, 2025) (citing Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025)); see also J.A.C.P. v. Wofford, 2025 WL 3013328, at *7 n.9 (E.D. Cal. Oct. 27, 2025) (citing Matter of Yajure Hurtado, 29 I&N Dec. 216); Chavez v. Noem, 2025 WL 2730228, at *3-4 (S.D. Cal. Sept. 24, 2025); Barco Mercado v. Francis, 2025 WL 3295903, at *12 (S.D. N.Y. Nov. 26, 2025). Here, because the government argues petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), petitioner would lack the recourse through statutory or administrative means because the government's assertion of § 1225(b) detention means petitioner has no statutory right to a bond hearing under § 1225(b) during his detention.  (See ECF No. 8 at 2-3.)  Accordingly, the Court finds the prudential exhaustion requirement should be waived.

**B.    Applicability of Section 1225 or Section 1226 (Claim One)**

The next issue is whether petitioner, who has lived in the United States since 2023, is subject to discretionary release as first ordered by immigration officials under § 1226(a) as petitioner contends, or whether petitioner is now subject to mandatory detention under § 1225(b)(2), as respondents argue.  8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing. 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under § 1226(a), the government makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)).  Section 1226(a) provides "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." Id. at 1202.  Therefore, "[i]f the noncitizen is detained under section 1226(a), [he or] she is entitled to a bond hearing." Labrador-Prato v. Noem, 2025 WL 3458802, at *3 (E.D. Cal. Dec. 2, 2025) (citing Jennings v. Rodriguez, 583 U.S. 281, 306 (2018)).  Respondents contend § 1225(b)(2)(A) applies because

petitioner is an "applicant for admission" and therefore subject to mandatory detention.  (ECF No. 8 at 2-3.)

The Court concludes that § 1226(a) applies to petitioner's detention.  First, immigration authorities placed petitioner in standard removal proceedings and released petitioner on bond on July 7, 2023.  (ECF No. 8 at 18, 23.)  Respondents do not dispute this fact.  (See ECF No. 8.)

Second, this Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondent's new interpretation[8] of Sections 1225 and 1226.  See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the [Immigration and Nationality Act], canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting more than thirty cases rejecting the government's assertion that § 1225 empowers DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals']  construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

---

[8]  Until DHS changed its policy in July 2025, the Government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.  See Rodriguez Diaz, 53 F.4th at 1196.

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).  This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9.

The Fifth Circuit decided Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026), during the merits briefing in this case, which may be why the parties do not address this case.  In Buenrostro-Mendez, the Fifth Circuit recently agreed with the government's interpretation of § 1225(b)(2).  This Court agrees with the district court in Gurvinder Singh v. Chestnut, 2026 WL 413839 (E.D. Cal. Feb. 14, 2026):

> Two courts of appeal have addressed whether 8 U.S.C. § 1225(b)(2)(A) applies to noncitizens who have lived in the United States for years without having been admitted.  See Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025) (concluding that government was not likely to prevail on the merits that petitioner was subject to mandatory detention under § 1225(b)(2)(A)); Buenrostro-Mendez v. Bondi, --- F.4th ---, Nos. 25-20496, 25-40701, 2026 WL 323330 (5th Cir. Feb. 6, 2026) (finding petitioners were subject to mandatory detention under § 1225(b)(2)(A)).  Respondents cite to the Buenrostro-Mendez decision.  Doc. 9 at 1.  The Court finds the analysis in Castañon-Nava and in the dissent in Buenrostro-Mendez to be more persuasive on the statutory interpretation issue. In any event, the Buenrostro-Mendez decision did not address the due process claim at issue in the present case."

Gurvinder Singh, 2026 WL 413839, at *1 n.1.  This Court does not find Buenrostro-Mendez to be persuasive for the reasons provided above.  See also Singh v. Baltazar, 2026 WL 352870, at *3-6 (D. Colo. Feb. 9, 2026) (rejecting the Buenrostro majority in its interpretation of § 1225 as nonbinding and highlighting the Seventh Circuit Court of Appeals' disagreement with the Buenrostro majority) (citing Castanon-Nava v. U.S. Dept of Homeland Sec., 161 F.4th 1048,

1052 (7th Cir. 2025)); Tomas Nicolas v. Warden, 2026 WL 364399, at *3 n.3 (S.D. Ind. Feb. 10, 2026) (disagreeing with Buenrostro majority and declining to follow); Chachipanta Cando v. Bondi, 2026 WL 357551, at *5 n.6 (D. Neb. Feb. 9, 2026) (same); Aroca v. Mason, 2026 WL 357872, at *15 n.40 (S.D. W.Va. Feb. 9, 2026) (same).  In addition, as in Gurvinder Singh, petitioner raises a due process claim, which the court in Buenrostro-Mendez did not address, and which the Court turns to next.

Following the majority of courts, this Court also rejects the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) and their contention that petitioner is an "applicant for admission" subject to § 1225(b)(2).  This Court finds that petitioner was initially detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner was released on bond in standard removal proceedings, he has resided in this country for over twenty months, and petitioner's March 2025 arrest and re-detention were not upon his arrival to the United States.  "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention."  Jennings, 583 U.S. at 306 (citing 8 CFR §§ 236.1(d)(1)).  If, at this hearing, the detainee demonstrates that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the immigration judge will order his or her release.  Rodriguez Diaz v. Garland, 53 F. 4th at 1197 (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).  As such, § 1226(a) governs petitioner's current detention.

This does not, however, end the analysis as it has in other cases.

**C.    Petitioner Received Process Related to His Re-Detention (Claim Two)**

Petitioner received a post-deprivation hearing before an IJ on May 15, 2025, where he had the opportunity to demonstrate he did not pose a danger to the community or a flight risk, and the IJ denied petitioner's request finding petitioner failed to meet his burden.[9]  (ECF No. 8 at 25.)  On September 26, 2025, the BIA affirmed the IJ's decision, finding that petitioner did not meet his

---

[9]  The Court notes that petitioner's May 2025 bond hearing preceded the government's July 2025 policy change and the BIA's September 2025 decision in Matter of Hurtado, 29 I&N Dec. 216 (BIA 2025).

burden to show he is not a danger and is not a flight risk. (ECF No. 8 at 30.) Thus, petitioner was provided due process in connection with his re-detention, and no further process is required in connection with such re-detention. This also moots petitioner's other arguments, including his argument that he is entitled to relief based on his alleged membership in the Maldonado Bautista class because petitioner already received a bond hearing before an IJ in May 2025.[10] The Court expressly declines to decide whether petitioner is a member of the Maldonado Bautista or whether Maldonado Bautista applies. See Herredia Gurrola v. Cruz, 2026 WL 494478, at *6 (E.D. Cal. Feb. 23, 2026) (declining to decide Maldonado Bautista claim and addressing statutory claim); see also De La Paz Salazar v. Noem, 2026 WL 496956, at *5 (E.D. Cal. Feb. 23, 2026) (noting that "the court in Maldonado Bautista explicitly clarified that it could not issue injunctive relief to class members ordering their immediate release or entitlement to a bond hearing").

## V.   RESPONDENTS' MOTION TO DISMISS

Because the Court recommends denying the petition, respondents' motion to dismiss (ECF No. 8) should be granted.

## VI.   CONCLUSION

In summary, the Court recommends that the petition for writ of habeas corpus be denied and respondents' motion to dismiss (ECF No. 8) be granted.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus (ECF No. 1) be DENIED.

2.  Respondents' motion to dismiss (ECF No. 8) be GRANTED.

3.  The Clerk of the Court be directed to enter judgment for respondents and close this case.

These findings and recommendations are submitted to the United States District Judge

---

[10]  The Court also declines to reach petitioner's argument that though he received a bond hearing before an IJ in May 2025 that addressed flight risk and danger, and which was affirmed by the BIA, he is entitled to another bond hearing (also referred to as a custody redetermination hearing). See also Rodriguez Diaz, 53 F.4th at 1193-94 (procedural due process does not require, in all cases in which a noncitizen is under prolonged statutory nonmandatory detention pending completion of removal proceedings, a second bond hearing, and detainee was not entitled to second bond hearing under Mathews v. Eldridge test for procedural due process rights).

10

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 18, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/lin0608.157.imm.bond

11